IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


PAUL FRANCIS, et al.,                    :

    Plaintiffs,                          :
                                 Case No. 3:01cv235

                                 JUDGE WALTER HERBERT RICE
    vs.                                  :

UNITED PARCEL SERVICE                    :
OF AMERICA, INC., et al.,
                              :

    Defendants.

---

**DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR JUDGMENT AND RENEWED MOTION FOR SUMMARY JUDGMENT (DOC. #53); DEFENDANT UPS ORDERED TO HEAR PLAINTIFF FRANCIS' APPEAL OF DENIAL OF BENEFITS WITHIN SIXTY (60) DAYS FROM DATE AND ADVISE THE COURT OF THE RESULTS OF SAME; FURTHER PROCEDURES INDICATED**

---


    Plaintiff Paul Francis is a former employee of Defendant United Parcel

Service, Inc. ("UPS"), designated in the Complaint (attached to Doc. #1) as United

Parcel Service of America, Inc. He brought the underlying action against UPS and

his former supervisor, Defendant Brian J. Cusson, on the basis that he was

wrongfully discharged.

Dockets.Justia.com

I.    PROCEDURAL BACKGROUND

In his original Complaint, Francis set forth several claims, all purportedly

arising under the laws of the State of Ohio.[1] The Defendants removed this action

from the Montgomery County Common Pleas Court (see Doc. #1), arguing that

Count Three of the Complaint, for breach of contract, was completely preempted

by the Employee Retirement and Income Security Act, 29 U.S.C. §1001, et seq.

("ERISA"), such that this Court has jurisdiction to hear the case under 28 U.S.C.

§§1331 & 1441. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67

(1987). Following removal, the Defendants moved for summary judgment. Doc.

#21. In opposing the Defendants' Motion, Francis sought leave to amend his

Complaint. Doc. #23. In an Order dated August 11, 2003, the Court sustained his

Motion for Leave to Amend Complaint, and denied (in part on the merits and in part

without prejudice) the Defendants' Motion for Summary Judgment. Doc. #36.

Francis subsequently filed an Amended Complaint, restating the breach of contract

claim as claims arising under ERISA, and adding CIGNA Corporation ("CIGNA")

(UPS' Plan Administrator) as a Defendant. Doc. #37. CIGNA later filed a motion to

substitute Life Insurance Company of North America ("LINA"), a subsidiary

responsible for evaluating the Plaintiff's entitlement to short-term disability

---

[1]His wife, Louise, is also joined as a Plaintiff, for purposes of asserting a
claim of loss of consortium. For analytical purposes, unless otherwise stated, the
Court will refer to the "Plaintiff" or "Francis" in the singular, when discussing Paul
Francis' claims.

benefits, as the party-defendant. Doc. #46. The Court granted this Motion by

Notation Order entered January 12, 2004. Following the resolution of some

discovery disputes, the Defendants moved for judgment on Francis' ERISA claims,

and renewed their motion for summary judgment on Plaintiffs' state law claims.

Doc. #53.


II.    FACTUAL BACKGROUND[2]

Francis began working for UPS in 1978. Doc. #22, Francis Dep. at 67. In

May of 2000, he took short-term disability ("STD") leave from his supervisory

position at the company's Dayton facility, pursuant to a group benefits plan

("Group Plan") funded and sponsored by UPS, and administered by a third-party,

CIGNA Integrated Care. Id. at 293; Doc. #22, Cusson Dep. at 14; Doc. #23, Ex.

20, at 106.[3] At the time he took leave, Francis had been identified by UPS

─────────────────

[2]With the exception of the filing of the administrative record, no new
discovery has been conducted since the Court entered its Order on Defendants'
original Motion for Summary Judgment. Accordingly, this recitation of facts is
taken in large measure from that Decision and Entry. Doc. #36 at 2-7. For purposes
of considering the Defendants' Renewed Motion for Summary Judgment, the Court
will construe the facts, and all reasonable inferences drawn therefrom, in the light
most favorable to Francis, who is the non-moving party. In determining whether
the Defendants are entitled to Judgment on his ERISA claims based on the denial
of his short-term disability benefits (Counts One-Three and Five), the Court will
review the record in the manner required by Wilkins v. Baptist Healthcare System,
Inc., 150 F.3d 609, 619 (6th Cir. 1998). See, infra note 6.

[3]Doc. #23 is the Plaintiffs' Memorandum in Opposition to the Defendants
Motion for Summary Judgment. The exhibits attached are authenticated by the
affidavit of David Duwel, Plaintiffs' counsel. Doc. #23, Ex. 1. Counsel's affidavit is

management as an employee whose work performance was in need of
improvement. Doc. #22, Cusson Dep. at 13-14. The cause of his need for leave
was depression (Doc. #23, Exs. 5 & 17), for which he was being treated by a
psychiatrist, Martha E. Tymeson, M.D., and a psychologist, Paul D. Entner, Ph.D.
Doc. #22, Francis Dep. at 25-26. At that time, Cusson was UPS's Human
Resources Manager for the Kentucky District, which encompassed the Dayton
facility. Doc. #22, Cusson Dep. at 4-5.

On November 13, 2000, Francis was notified by CIGNA that it had
determined that he was no longer disabled and that his STD benefits would be
discontinued. Doc. #23, Ex. 3. The basis for its decision was its inability to obtain
records from Dr. Tymeson to substantiate his disability claim. Id. On November 22,
2000, counsel for Francis wrote to CIGNA, requesting that it reconsider its
decision, and take into account not only the records of treatment by Dr. Tymeson,
but also those of Dr. Entner, before rendering a final decision. Id., Ex. 5.
Construing counsel's letter as an appeal, CIGNA proceeded to consider
supplemental records submitted by both Dr. Tymeson and Dr. Entner. Id., Exs. 5,
8, 17 & 18. Dr. Tymeson was of the opinion that, as of November 14, 2000,
Francis could return to work immediately, if limited to a part-time, daytime, non-
managerial position, under a different supervisor than he had at the time he began
his leave. Id., Ex. 17. As of November 22, 2000, Dr. Entner expressed doubt as to

---

sufficient to satisfy the requirements of Fed. R. Civ. P. 56.

Francis' ability to return to work, but by March 7, 2001, had indicated that he could possibly begin work by May 1, 2001. Id., Exs. 5 & 18. CIGNA affirmed its decision to deny continued STD benefits on March 16, 2001, informing Francis that he could appeal the decision to UPS, per the terms set forth in the Group Plan Summary Plan Description ("SPD").[4] Id., Ex. 10.

Notified by CIGNA that Francis' STD benefits had been discontinued, Cusson wrote to Francis on March 23, 2001, directing him to report to work on April 2, 2001, or face termination. Doc. #23, Ex. 11. Cusson did not address Francis' right to appeal CIGNA's decision. Neither did Cusson specify a time or place for Francis to report to work, even though the position he had occupied prior to his taking leave, the previous May, had been assumed by someone else. Id.; Doc. #22, Cusson Dep. at 41-47. Furthermore, Jeff Funk, the manager of the Dayton facility, had not been informed by higher management to arrange any particular job for Francis or even to expect his return to work. Doc. #22, Funk Dep. at 10-11, 17.

On March 27, 2001, counsel for Francis wrote to Cusson, notifying him that Dr. Entner was not in agreement with Dr. Tymeson regarding Francis' ability to return to work by April 2nd. Doc. #23, Ex. 12. He stated that Dr. Entner did not think that Francis should return to work until May 1, 2001, at the earliest, and inquired into whether UPS would at least be amenable to providing the

---

[4]ERISA requires that plan participants be furnished with written summaries of the details of their plan. See 29 U.S.C. §§1022(a) & 1024(b).

accommodations recommended by Dr. Tymeson. Id., Exs. 12 & 17. He concluded

his letter by opining that Francis was definitely suffering from a disability, due to

his depression, and that Dr. Entner was prepared to provide any additional

information UPS might request. Id., Ex. 12. Cusson received this letter, but did not

respond to it. Doc. #22, Cusson Dep. at 34. Instead, he forwarded the letter to

counsel for UPS on March 29, 2001. Id. at 36-37. Counsel for Francis attempted

to make facsimile and voice communication with Cusson on several other

occasions over the next several days, but Cusson, though he received these

communications, neither responded to them nor forwarded the messages contained

therein to counsel or anyone else at UPS prior to terminating Francis. Id. at 40, 49-

55.

    On April 2, 2001, Francis contacted Funk at the Dayton facility. Doc. #22,

Funk Dep. at 6; Doc. #22, Cusson Dep. at 19. Several days before, Funk had been

notified by his division manager, Terry Field, that Francis might be contacting him,

and that if that occurred, he was to have Francis contact Cusson. Doc. #22, Funk

Dep. at 9-10. Funk was not told that Francis was actually expected to return to

work at the Dayton facility, and he had not made any arrangements for his return.

Id. at 10-11, 17-18. When he contacted Funk at the Dayton facility, Francis

explained his situation: that he had been notified by Cusson to report for work, but

that he was still disputing his ability to do so, and that, in any event, Cusson had

not responded to his attorney's messages, so that he was not certain how to

proceed. Doc. #22, Francis Dep. at 335-37. Funk took his phone number and told him not to bother to drive to Dayton, and that he (Funk) would contact Cusson and get back to Francis that day with further instructions. Id. at 303, 336. Francis did not hear further from Funk. Id. at 303, 345.

By letter dated April 3, 2001, Cusson informed Francis that his employment had been terminated because of his failure to report to work the previous day, as he had been directed to do. Doc. #23, Ex. 2; Doc. #22, Cusson Dep. at 18. Based on CIGNA's determination that Francis was not disabled, UPS had no intention of making an accommodation for Francis' purported needs, as his counsel had requested. Doc. #22, Cusson Dep. at 48. Although Francis himself never attempted to contact Cusson personally, neither did he receive any communication from Cusson other than Cusson's letter of March 23, 2001. Doc. #22, Francis Dep. at 340, 349-50. As an additional matter, counsel for UPS did not respond to counsel for Francis until April 13, 2001, 10 days after Francis had been terminated. Doc. #22, Cusson Dep. at 49-50; Doc. #23, Ex. 16.

With regard to eligibility determinations for benefits, CIGNA administered the Group Plan and was responsible, through its subsidiary, LINA, for preliminary determinations of eligibility. Doc. #23, Ex. 20, at 106; Doc. #22, Cusson Dep. at 25-27. Ultimately, however, UPS was responsible for deciding any final appeal. Doc. #23, Ex. 20, at 118. In particular, the Group Plan SPD informs plan participants, such as Francis, of the following claims procedure:

> You … are entitled to a review of a denied claim. The situation should first be appealed to the highest available level with the administrator of the services (e.g., … CIGNA …). If you then believe further review is needed on a plan for which UPS decides appeals, you may (within 60 days of the administrator's final appeal denial) submit a written request for an appeal with the UPS Claims Review Committee at the Corporate Headquarters. All appeals to UPS must be submitted through the region Human Resources department.
>
> UPS is not a fiduciary with respect to the benefits or programs for which it does not have the responsibility to decide appeals. * * *

Doc. #23, Ex. 20, at 117. The SPD then goes on to identify UPS as the final appellate entity for all claims arising under the Group Plan administered by CIGNA. In denying his initial appeal, CIGNA explicitly informed Francis that he had a right to further appeal, and should contact his "Region Employee Services Manager" to facilitate that process. Doc. #23, Ex. 10.

In its letter of April 13, 2001, to counsel for Francis, counsel for UPS referenced a letter which the former had sent to Cusson on April 4, 2001, which had alluded to Francis' right to appeal CIGNA's decision.[5] Counsel for UPS stated that it found the allusion to a right of appeal "puzzling," given that CIGNA's final decision was itself in regard to an appeal of its initial decision of November 13, 2000. Doc. #23, Ex. 16. Counsel for UPS then stated that if Francis did not agree with CIGNA's decision, he needed "to take whatever steps are appropriate." Id. The letter made no mention of what those steps might be.

---

[5]This letter was apparently sent to Cusson before counsel for Francis had become aware that Francis had been terminated. Doc. #23 at 7.

III.    STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT[6]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also, Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[6]The Court must apply a different standard of review where Francis seeks recovery of ERISA benefits. Generally, a court is confined to reviewing the administrative record in such actions. Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 619 (6th Cir. 1998). However, where a complaint makes a procedural challenge to the administrator's decision, such as alleging a lack of due process afforded by the administrator, the Court may look to evidence outside of the administrative record. Id. In the present case, Counts One, Three and Five make such a procedural challenge, alleging that Francis was denied full and adequate rights under the plan. In addressing those claims, the Court will look to evidence beyond that contained in the administrative record. Count Two seeks the recovery of Plan benefits. In addressing that claim, the Court will confine its review of the evidence to that presented in the administrative record. The Defendants' motion on Francis' other ERISA claims (Counts Four and Six) and non-ERISA claims made under state law (Count Seven-Thirteen) will be treated as ones for summary judgment.

242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56[©]. Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence

to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder.  10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment …").  Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

IV.    ANALYSIS

Francis sets forth thirteen counts in his Amended Complaint (Doc. 37):

(1)    Recovery of Plan Benefits against UPS in violation of 29 U.S.C. § 1132(A)1(B),

(2)    Recovery of Plan Benefits against LINA[7] in violation of 29 U.S.C. §
       1132(A)1(B),

(3)    Breach of Fiduciary Duty against UPS and LINA in violation of 29
       U.S.C. §§ 1104, 1105, 1009 and 1132 (A),

(4)    Attorneys' Fees and Costs against UPS and LINA pursuant to 29
       U.S.C. § 1132(G)(1),

(5)    Failure to Afford Plaintiff Meaningful Representation through an
       "Authorized Representative" against UPS in violation of 29 CFR §
       2560.503-1(g)(1) (2000),

(6)    Retaliation by UPS in violation of 29 U.S.C. § 1140,

(7)    Handicap Discrimination against UPS and Cusson in violation of
       O.R.C. §§ 4112.02 and 4112.99,

(8)    Retaliation against UPS and Cusson in violation of O.R.C. §§ 4112.02
       and 4112.99,

(9)    Violation of Ohio Public Policy, Right to Seek Legal Counsel, against
       UPS and Cusson,

(10)   Tortious Interference with Employment, against Cusson

(11)   Intentional Infliction of Emotional Distress, against UPS and Cusson,

(12)   Violation of Ohio Public Policy, state protection of ERISA rights,
       against UPS and Cusson, and

(13)   his wife's claim for Loss of Consortium, against UPS and Cusson.

The Defendants contend that Plaintiff's claims must fail, either on their

merits or because they are not cognizable under the applicable federal and state

law. The thirteen claims can be broken down into five groups: claims made against

---

[7]Referred to as CIGNA in the Amended Complaint; hereinafter, "LINA" will
be substituted for references made to "CIGNA" pursuant to this Court's Notation
Order of January 12, 2004, sustaining Joint Motion to Substitute Party Defendant.

12

LINA (Count Two), claims made against UPS (Counts One, Five and Six), claims made against Cusson (Count Ten), claims made against LINA and UPS (Counts Three and Four), and claims made against UPS and Cusson (Counts Seven-Nine and Eleven-Thirteen). Francis' ERISA claims (Counts One-Six), which form the basis of this Court's jurisdiction, are pled against UPS, LINA or both. The state law tort and disability discrimination claims (Counts Seven-Thirteen) are pled against both UPS and Cusson except for Count Ten, which is pled solely against Cusson. For analytical purposes, the Court will address, in the following order, the ERISA claims made against LINA, the ERISA claims made against UPS and the state law claims.

1.    ERISA Claims

A. LINA (Counts Two-Four[8])

Francis alleges that LINA breached its fiduciary duty when it determined that he was no longer eligible for STD benefits and when it denied his appeal of that determination. Doc. 37 at ¶55 (Count Three). He seeks benefits he would have otherwise received (Doc. #37, Count Two) and attorneys' fees and costs (id., Count Four). Defendants seek judgment, arguing that the decision not to continue Francis' benefits was reasonable, and he is therefore not entitled to the relief he seeks.

In Count Two of his Complaint, Francis alleges that the decision to deny him

---

[8]Count Four, seeking attorney's fees and costs versus UPS and LINA, will be discussed, infra, in the discussion of ERISA claims made against UPS.

short-term disability benefits was arbitrary and capricious. Doc. #37, ¶ 51. Where, as here, the Plan Administrator is given discretion to determine the eligibility of plan participants, the courts should affirm the administrator's decision unless it is found to be arbitrary and capricious. Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 617-19 (6th Cir. 1998). Under the arbitrary and capricious standard, decisions of the administrator must be upheld if "rational in light of the plan's provisions." Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 984 (6th Cir.1991). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Williams v. Int'l Paper Co., 227 F.3d 706 (6th Cir.2000). Thus, the standard requires that the decision "be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir.1998). In Count Two, Francis seeks the recovery of plan benefits, in determining whether a decision denying a plaintiff disability benefits was reasonable, courts are confined to reviewing the administrative record. See Wilkins, 150 F.3d at 619; see also, infra n. 6.

Here, two of Francis' doctors indicated that, given certain accommodations, he was able to return to work.[9] Doc. #51, Administrative Record ("AR") at 000206 and 000227. Specifically, his return to work plan, developed by Dr. Tymeson,

---

[9]While both Dr. Tymeson and Dr. Entner believed that Francis was able to return to work, they disagreed about when he would be able to do so.

14

included: working with a different supervisor; working not more than 4 hours a day, not more than 5 days a week, Monday through Friday, on a shift that extended from the early morning to mid-day; non-managerial type work; and limited travel. Id. at 000227. It was based on these recommendations, and other medical records, that LINA determined that Francis was able to return to work, and was no longer eligible for STD benefits. Id. at 000211-212. The evidence indicates that Francis was considered disabled by Dr. Tymeson at least through January 9, 2001. Id. at 000229. There is additional evidence in the record that Dr. Entner was reluctant to send him back to work as quickly as Dr. Tymeson, and that Francis might not have been ready to return to work until May of 2001. Doc. #51, A.R. at 000206 and  000213.

In determining that Francis was no longer disabled and no longer qualified for short-term disability benefits because he could return to work, the Plan Administrator was arbitrary and capricious. Its determination was not rational in light of the plan provisions. Substantial evidence indicated that Francis continued to be disabled at the time he was cleared to return to work and that he was only cleared to return to work part-time, with restrictions.  The Group Plan provides that residual benefits will be paid if an employee returns to work part-time, while recovering from a short-term disability. AR at 000461. In light of the plan provision that provides for partial short-term benefits for employees who remain disabled but return to work part-time, the decision to deny Francis at least those partial benefits

15

was not rational.

In denying Francis all benefits, LINA denied him benefits he was clearly entitled to under the Group Plan. LINA's decision was not rational in light of the Plan's provisions and it was therefore arbitrary and capricious. Consequently, Defendants' Motion for Judgment on Count Two is OVERRULED.


In Count Three of their Amended Complaint, Francis seeks relief for a breach of fiduciary duty, such relief predicated on 29 U.S.C. §§ 1104, 1105, 1109 and 1132. Doc. #37 at ¶¶ 54- 63. He has clearly abandoned his claims under 29 U.S.C. §§ 1104, 1105 and 1109. Doc. #57 at 9 ("concerns sought to be remedied by § 1109, are not at issue in this matter.... Francis does not allege, nor can allegations be reasonably construed to touch upon any conduct derivative of the admonishments set forth in §§ 1104, 1105 [and]1109"). All that remains of Count Three is the claim for breach of fiduciary duty based on § 1132. An ERISA plan participant can seek relief against his plan administrator under § 1132(a), if he has been harmed by the administrator's breach of a fiduciary duty. Varity Corp. v. Howe, 516 U.S. 489, 512, 116 S.Ct. 1065 (1996). However, a participant cannot seek relief for a breach of fiduciary duty if the alleged violations are adequately remedied under other provisions. Id.; see Wilkins supra at 614-15. Because the Plaintiff has successfully asserted a claim for denial of benefits against LINA on Count Two, he cannot also assert a claim for breach of fiduciary duty. See id.

16

Consequently, the Defendants' Motion for Judgment on Count Three is
SUSTAINED.

    B. <u>UPS</u> (Counts One and Three-Six)

    In Count One of the Amended Complaint, Francis alleges that UPS denied
him STD benefits he was due by failing to "honor the terms of the Plan that
mandated Plaintiff's appeal…." Doc. #57 at ¶ 45. Defendants argue that, because
Francis never filed an appeal, he cannot argue that he is entitled to plan benefits
from UPS. The Defendants' argument is specious. As the Court stated in its
Decision and Entry Overruling Defendants' Motion for Summary Judgment (Doc.
#36), "as the facts set forth above make plain, when construed in a light most
favorable to Francis, there is ample evidence that UPS and its counsel were, or
should have been, on notice of his desire to contest and appeal [LINA's] decision,
but that he was never afforded that right or opportunity." Doc. #36 at 20.

> Correspondence from UPS' counsel indicates that they were aware
> that he wished to appeal the decision. In its letter of April 13, 2001,
> to counsel for Francis, counsel for UPS referenced a letter which the
> former had sent to Cusson on April 4, 2001, which had alluded to
> Francis' right to appeal [LINA's] decision. Counsel for UPS stated that
> it found the allusion to a right of appeal puzzling….

<u>Id.</u> at 7 (internal citations and quotations omitted).

    The Defendants argue that Francis never filed a formal appeal to the Region
Employee Service Manager. Doc. #53 at 9-10. The letter sent from Francis'
counsel to Cusson, copying Wayne Herring, "UPS Region Employee Service

17

Manager," clearly indicates that Francis contested LINA's decision to discontinue short-term disability payments, and further indicated his desire to appeal that decision, if necessary. Doc. #23, Ex. 15. As this Court discussed thoroughly in its earlier Decision and Entry, UPS (through Cusson, its counsel, and a variety of other individuals) was on notice that Francis wanted to appeal the LINA decision. Doc. #36 at 19-23. The fact that he attempted to do so through his counsel does not relieve the Defendants of their duty to review his appeal. "The regulations promulgated by the Department of Labor, pursuant to 29 U.S.C. § 1135..., expressly required that an ERISA plan allow a claimant to appeal a claim denial through his 'authorized representative.'" Doc. #36 at 21 (quoting 29 C.F.R. § 2560.503-1(g)(1) (2000)). "Francis was also entitled to 'a reasonable opportunity' to receive 'a full and fair review' of [LINA's] decision." Id. (quoting 29 C.F.R. § 2560.503-1(h)(2) (2000)).

UPS never afforded Francis the opportunity to appeal LINA's decision; therefore, the Defendants' Motion for Judgment on Count One of the Plaintiff's Amended Complaint is OVERRULED.

UPS is hereby ordered to provide Francis the opportunity to appeal LINA's denial of his short-term disability benefits. See Marks v. Newcourt Credit Group, Inc., 342 F.3d 444 (6th Cir. 2003) (holding that when a plan administrator fails to comply with the procedural requirements of ERISA, it is appropriate to remand the case to the plan administrator). The Defendants are to review said appeal within 60

days from the date of this Order. Francis, on appeal, may raise any additional arguments he wishes regarding his eligibility for benefits. See Sanford v. Harvard Industries, Inc., 262 F.3d 590 (6th Cir. 2001). The Court is to be notified forthwith of the decision on appeal

Count Three is plead against both UPS and LINA, and to the extent it refers to UPS, the Defendants' Motion for Judgment on Count Three is SUSTAINED as to UPS for the same reasons it is sustained as to LINA.

In Count Four of the Amended Complaint, Francis seeks attorneys' fees and costs against both UPS and LINA. Doc. #37 at ¶¶64-66. An award of attorneys' fees in an action such as this one is in the discretion of the court. 29 U.S.C. § 1132(g)(1). As the matter before the Court has not yet been completely resolved, and will not be in this Opinion, a decision on whether attorneys' fees are warranted is not appropriate at this time. On proper motion, filed at the appropriate time, the Court will consider whether to grant such an award. The Defendants' Renewed Motion for Summary Judgment on Count Four is OVERRULED, as premature, without prejudice to renewal at the proper time.

Count Five of the Amended Complaint alleges that UPS failed to afford Francis the opportunity for meaningful representation through an authorized

representative. Francis seeks relief in the form of the benefits he would have allegedly otherwise received, and alleges other economic and consequential damages as a result of UPS' acts. The <u>gravamen</u> of Count Five is a breach of fiduciary duty by UPS (Doc. #37 at ¶¶ 71-74), and is repetitive of Count Three. Francis has successfully articulated a claim based on the denial of benefits in Count One. He, therefore, cannot also maintain a claim for breach of fiduciary duty under these circumstances. <u>See</u> <u>Wilkins</u> <u>supra</u> at 614-15. Defendants' Motion for Judgment on Count Five is SUSTAINED.

Count Six of the Amended Complaint alleges that Francis was discharged in retaliation for pursuing his rights under ERISA. Francis points to no evidence in the record sufficient to sustain such a claim. Therefore, Defendants' Renewed Motion for Summary Judgment on Count Six is SUSTAINED. <u>See</u> <u>Celotex</u> <u>supra</u> at 324 (the party opposing summary judgment must go beyond the unverified pleadings and present evidentiary material in support of its position).

In sum, Defendants' Motion for Judgment on Counts One, versus UPS, and Two, versus LINA, is OVERRULED. Defendants' Motion for Judgment on Counts Three, versus UPS and LINA, and Five, versus UPS, is SUSTAINED. Defendants' Renewed Motion for Summary Judgment on Count Four, versus UPS and LINA, is OVERRULED without prejudice to renewal, and Defendants' Renewed Motion for

Summary Judgment on Count Six, versus UPS, is SUSTAINED. UPS is ordered to

provide Francis, within 60 days of the date of this Order, the opportunity to appeal

LINA's denial of his short-term disability benefits. UPS must advise this Court of

the results of said appeal as soon as same are determined.


2.    <u>State Law Claims</u> (Counts Seven-Thirteen)[10]

A. <u>Handicap Discrimination</u> (Count Seven)

The <u>prima</u> <u>facie</u> burden is similar for a plaintiff attempting to demonstrate

both handicap discrimination and a failure to accommodate. To show discrimination

because of a handicap under O.R.C. § 4112.02, a plaintiff must demonstrate:

1)    That he or she was handicapped,

2)    That an adverse employment action was taken by an employer,
       at least in part, because the individual was handicapped, and

3)    That the person, though handicapped, can safely and
       substantially perform the essential functions of the job [with or
       without a reasonable accommodation],[11]

<u>Columbus Civ. Serv. Comm. v. McGlone</u>, 82 Ohio St.3d 569, 571, 697 N.E.2d

204 (1998) (brackets in original). To demonstrate that an employer has failed to

---

[10]All of the Plaintiff's state law claims, with the exception of Count Ten, are alleged against both UPS and Cusson. Count Ten is alleged solely against Cusson.

[11]Under Ohio's disability discrimination law, an employer cannot require that the employee be able to perform every conceivable function of the job. <u>Miami Univ. v. Ohio Civ. Rights Comm.</u>, 133 Ohio App.3d 28, 41, 726 N.E.2d 1032 (1999). Instead, the disabled employee must be able to perform the essential functions with or without reasonable accommodation. <u>Id.</u>

reasonably accommodate a handicap, the employee must demonstrate:

1) that he was handicapped,

2) that the employer was aware of the handicap,

3) that he could perform the essential functions of the job with or without accommodation.

Shaver v. Wolske & Blue, 138 Ohio App.3d 653, 664-65, 742 N.E.2d 164 (2000) (internal citations and quotations omitted). A handicap is a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment. O.R.C. § 4112.01(A)(13) (emphasis added); compare, Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S.Ct. 681 (2002) (raising doubts about whether work can be considered a "major life activity" under the ADA). Several Ohio courts have found that depression, under certain conditions, can qualify as a handicap under section 4112.02. Mitnaul v. Fairmount Presbyterian Church, 149 Ohio App.3d 769, 778 N.E.2d 1093 (2002); Shaver v. Wolske & Blue, 138 Ohio App.3d 653, 742 N.E.2d 164 (2000); Hays v. Cleveland Pneumatic Co., 92 Ohio App.3d 36, 634 N.E.2d 228 (1993). However, merely being diagnosed with depression is not sufficient. In order to qualify as a handicap, the depression must substantially limit one or more major life activities. Beauchamp v. CompuServe, Inc., 126 Ohio App.3d 17, 709 N.E.2d 863 (1998).

22

Defendants claim that Francis cannot establish a prima facie case of handicap discrimination for three reasons: he is not disabled, because he has no impairment that substantially limits a major life activity; he was not qualified to perform the essential functions of his job, with or without reasonable accommodations; and there is no evidence that his termination was because of disability. Doc. #53 at 23-29. To be substantially limited in the major life activity of working, a plaintiff must be significantly restricted in the ability to perform a class or broad range of jobs. Shaver, supra at 666. Under Ohio law, evidence of Francis' depression, and the severe restrictions placed on his return to work because of it, raise a genuine issue of material fact about whether he was handicapped. See, Mitnaul, supra. It was Dr. Tymeson's opinion that Francis could return to work "not more than four (4) hours per day, Monday through Friday, early morning to daytime shift work; non-managerial position…." That his work restrictions eliminated an entire class of jobs, managerial positions, is sufficient, even ignoring the other restrictions, to raise a genuine issue of fact regarding whether his depression constituted a handicap under Ohio law. See id.

Francis has also raised a genuine issue of material fact regarding the second element of his termination claim, which requires that he demonstrate that he was terminated, at least in part, because of his handicap. Francis has offered evidence that he repeatedly attempted to contact his employer, expressing his willingness to return to work, if his disability were accommodated. His repeated attempts to

23

discuss his return to work through his attorney were ignored by UPS, as was his attempt to ascertain the details of that return to work. Given the short amount of time between his disability leave and his termination, and the extensive efforts undertaken by him to return to work, the evidence is such that a reasonable jury could determine that he was terminated, at least in part, because of his disability. Cf., Grooms v. Supporting Counsel of Preventative Effort, 157 Ohio App.3d 55, 809 N.E.2d 42 (2004) (finding that termination four months after plaintiff took leave because he was "sick" was too remote in time to support claim of disability discrimination).

Defendants' argument that, because Francis was unqualified for his previous position, he fails to produce evidence sufficient to raise a genuine issue of material fact regarding the third element, that he could perform the essential functions of his job with or without accommodation, is unavailing.[12] Both of Francis' treating doctors indicated he was able to return to work. The Defendants have submitted no evidence which might indicate that his return presented a danger to himself or to others; nor have they submitted evidence that indicates that he was unable to perform the essential functions of his job. The evidence is such that a reasonable jury could find that Francis was able to safely and substantially perform the

---

[12]The Defendants' argument relies on federal law interpreting the Americans with Disability Act. Doc. #53 at 26-27. However, the Plaintiff's claim here is made pursuant to Ohio state, not federal law. Unlike the Americans with Disability Act, a plaintiff, under Ohio law, is not required to prove that he is "otherwise qualified." He is required instead to demonstrate that he can safely and substantially perform the duties of the position.

essential functions of his position, thus satisfying the third element of his <u>prima</u>

<u>facie</u> case. <u>See</u>, <u>Eisman v. Clark County Dept. of Human Services</u> 2002 WL

31761489 (2002), unreported, appeal not allowed, 98 Ohio St.3d 1538, 786

N.E.2d 900 (finding that where plaintiff failed to introduce evidence that a

physician had released her to return to work following a disability leave, she failed

to demonstrate that she could safely and substantially perform the essential

functions of her job).

Francis having established a <u>prima</u> <u>facie</u> case that he was terminated

because of his handicap, the Defendants must articulate a legitimate, non-

discriminatory reason for his termination. <u>Hood v. Diamond Products, Inc.</u> 74 Ohio

St.3d 298, 302, 658 N.E.2d 738 (1996). Towards that end, Defendants assert

that he was terminated for failing to report to work as instructed. Doc. #22,

Cusson Dep. at 18. Defendants, having successfully articulated a legitimate, non-

discriminatory reason, Francis is required to introduce evidence that would allow a

reasonable jury to infer that their reason is a pretext for discrimination. In <u>Manzer</u>

<u>v. Diamond Shamrock Chemicals Co</u>. (29 F.3d 1078, 1084 (6th Cir. 1994)) the

Sixth Circuit discussed the methods by which a plaintiff can establish pretext:

> To make a submissible case on the credibility of his employer's explanation,
> the plaintiff is "required to show by a preponderance of the evidence either
> (1) that the proffered reasons had no basis <u>in</u> <u>fact</u>, (2) that the proffered
> reasons did not *actually* motivate his discharge, or (3) that they were
> <u>insufficient</u> to motivate discharge." <u>McNabola v. Chicago Transit Authority</u>,
> 10 F.3d 501, 513 (7th Cir. 1993) (emphasis added and quotation marks
> omitted).  The first type of showing is easily recognizable and consists of
> evidence that the proffered bases for the plaintiff's discharge never

25

happened, i.e., that they are "factually false."  [Anderson v.] Baxter Healthcare, 13 F.3d [1120, 1123-24 (7th Cir. 1994)].  The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.  These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity."  Hicks, 509 U.S. at [511], 113 S.Ct. at 2749.  As Hicks teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.

The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one.  In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant.  In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext or coverup.

Id. at 1084 (emphasis in the original)

The evidence, taken in the light most favorable to Francis as the non-moving party, makes clear that he was prepared to return to work, attempted to clarify the conditions under which he would return to work, and even called the person who was to be his supervisor on the day he was supposed to return to work to facilitate his return. Francis, through his attorney, made numerous attempts to contact the Defendants regarding his imminent return to work, his dispute over the termination of his STD benefits, and the accommodations that would be necessary. See, Doc. #23, Ex. 15. In addition, on the day he was required to return to work, Francis contacted the manager of the facility at which he was to work and was told not to

bother driving in to work, to stay home and to await further instructions that he never received. Doc. #22, Francis Dep. at 303, 306. From this evidence, a jury could reasonably infer that the legitimate, non-discriminatory reason asserted by the Defendants, that Francis was terminated for failing to report to work on the day he was required to do so, was false. A reasonable jury might also infer that, based on the Defendants refusal to respond to Francis' attorney's attempts to discuss reasonable accommodations for his return to work, discrimination based on Francis' handicap was the real reason for his termination. Consequently, Francis has introduced sufficient evidence to create a genuine issue of material fact regarding his claim that he was terminated because of his handicap.

In addition to his claim that he was terminated because of his handicap, Francis has also argued that the Defendants failed to accommodate his handicap. Ohio law places a duty on employers to make reasonable accommodations for employees with disabilities. Ohio Adm.Code 4112-5-08(E)(1). The above McDonnell Douglas type analysis (McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973)) does not apply to Francis' failure to accommodate claim. Shaver, supra at 663-64. An employee's request for an accommodation triggers the employer's duty to make a good faith effort to seek a reasonable accommodation for the employee. Id. This duty requires that an employer engage in an interactive process with the employee to determine what would be a reasonable accommodation. Id. To show that his employer has failed to engage in this interactive process, an employee must demonstrate:

1)      the employer knew of the employee's disability;

2)      the employee requested accommodations or assistance for his

27

disability;

3)    the employer did not make a good faith effort to assist the employee in seeking accommodations; and,

4)    the employee could have been reasonably accommodated but for the employer's lack of good faith.

Id. Where there is a genuine issue of material fact that the employer did not act in good faith, summary judgment cannot be granted on the issue that a reasonable accommodation was not possible, because the employer's bad faith precludes consideration of all possible reasonable accommodations. Id. Francis has clearly raised a genuine issue of fact regarding the first two elements. See supra. Further, his evidence, indicating that the Defendants had no job in mind for him, and made no effort to find a job that would reasonably accommodate his restrictions, is sufficient to raise a genuine issue of fact on the third element. See, Wooten v. Columbus, Div. of Water, 91 Ohio App.3d 326, 632 N.E.2d 605 (1993) (holding that an employer is required to make an effort to place a disabled employee in existing position which is vacant, for which he is qualified, and which he can perform).  Francis has raised a genuine issue of material fact sufficient for a jury to find that the Defendants acted in bad faith; therefore, the Court need not, at this time, consider whether he could have been reasonably accommodated. Shaver, 138 Ohio App.3d at 665.

Because Francis has successfully raised genuine issues of material fact on his claim that he was terminated because of his disability, and that the Defendants failed to accommodate him, the Defendants' Renewed Motion for Summary Judgment on Count Seven is OVERRULED.

B. <u>Retaliation</u> (Count Eight)

In addition to claiming that he was terminated because of his handicap, Francis also argues that he was terminated in retaliation for seeking a reasonable accommodation and for seeking reinstatement of his ERISA benefits.[13] To establish a claim of retaliatory discharge, a plaintiff must demonstrate that:

1)    he engaged in protected activity;

2)    the employer knew of his participation in the protected activity;

3)    he was discharged; and

4)    there was a causal link between the protected activity and the discharge.

<u>Chandler v. Empire Chem., Inc.</u>, 99 Ohio App.3d 396, 650 N.E.2d 950 (1994). Once a plaintiff successfully establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for its action. <u>Id.</u> If the defendant carries out that burden, the burden then shifts back to the plaintiff to show that the articulated reason was merely a pretext. <u>Id.</u>; <u>Manzer</u>, <u>supra</u>.

The Defendants argue that Francis cannot demonstrate that he engaged in a protected activity since the evidence shows that he "never complained to anyone about his alleged handicaps." Doc. #53 at 29. What Defendants ignore is the ample evidence, already discussed, that he was actively seeking to have his disability accommodated through his counsel, and that they refused to

---

[13]To the extent that this Count of Plaintiffs' Amended Complaint asserts a claim of retaliation for pursuing rights guaranteed by ERISA, it is preempted by ERISA and the Defendants' Renewed Motion for Summary Judgment is SUSTAINED.

communicate with him through said counsel. Seeking the advice of an attorney regarding alleged discriminatory activity is a protected activity. Brentlinger v. Highlights for Children, 142 Ohio App.3d 25, 753 N.E.2d 937 (2001). The many letters Francis' counsel sent to the Defendants clearly put them on notice that he had engaged in the protected activity. As for the final element, the causal link between the protected activity and Francis' discharge, though a temporal connection is generally insufficient to demonstrate a causal connection, the short time between his counsel's first attempt to communicate with the Defendants, March 27, 2001, and Francis' termination, April 4, 2001, coupled with the large number of attempts to communicate made by counsel and the deafening silence from the Defendants in response, constitute sufficient evidence from which a reasonable jury might decide that Francis was indeed terminated because he had engaged in a protected activity.

Like Francis' claim that he was terminated because of his handicap, once a plaintiff successfully satisfies his prima facie burden, it is up to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. The Defendants have again suggested, as a legitimate, non-discriminatory reason, that Francis was discharged because he failed to report to work on or by the required date. Though they have again satisfactorily articulated a legitimate, non-discriminatory reason, Francis has, for the reasons discussed above in reference to his claim of handicap discrimination, introduced sufficient evidence for

a reasonable jury to conclude that the Defendants' legitimate, non-discriminatory

reason for discharging him was a pretext for retaliation under the second Manzer

method. See, Manzer supra at 1084. Because genuine issues of material facts exist

on this issue, the Defendants' Renewed Motion for Summary Judgment is

OVERRULED as to Count Eight.


C. Violation of Ohio Public Policy (Counts Nine and Twelve)

Francis contends that he was discharged for seeking legal counsel, in

violation of public policy (Count Nine), and that the state of Ohio has a public

policy interest in enforcing his ERISA rights (Count Twelve). The common-law

doctrine of employment-at-will generally governs employment relationships in Ohio.

Under this doctrine, a general or indefinite hiring is terminable at the will of either

the employee or the employer; thus, a discharge of an "at will" employee, without

cause, does not usually give rise to an action for damages. Mers v. Dispatch

Printing Co., 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). An exception exists

where an at-will employee is discharged in violation of public policy. Greeley v.

Miami Valley Maintenance Contrs., Inc., 49 Ohio St.3d 228, N.E.2d 981 (1990). In

determining whether a plaintiff has been discharged in violation of public policy,

Ohio courts look at four elements:

1)    that [a] clear public policy existed and was manifested in a
      state or federal constitution, statute or administrative
      regulation, or in the common law (the clarity element);

2)      that dismissing employees under circumstances like those
        involved in the plaintiff's dismissal would jeopardize the public
        policy (the jeopardy element);

3)      that the plaintiff's dismissal was motivated by conduct related
        to the public policy (the causation element); and,

4)      that the employer lacked overriding legitimate business
        justification for the dismissal (the overriding justification
        element).

Collins v. Rizkana, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995) (internal

citations and quotations omitted). The first two elements are questions of law to

be decided by a court, and the second two are questions of fact to be decided by a

jury. Id. As has been noted above, Ohio courts have found that there exists clear

public policy supporting the right to seek legal counsel, and dismissing an employee

while he is trying to secure rights available to him through the assistance of legal

counsel would jeopardize that public policy. See, Brentlinger supra; see also,

Chapman v. Adia Services, Inc., 116 Ohio App.3d 534, 688 N.E.2d 604 (1997).

Consequently, based on evidence discussed above, Francis has successfully

demonstrated the first two elements of his prima facie case. Francis has also

created a genuine issue of fact regarding the third element. He has introduced

evidence indicating that he was attempting to have his disability accommodated

with the help of legal counsel and that UPS repeatedly refused to speak to his

attorney. Francis' termination came while his attorney was in the process of

attempting to have his disability accommodated and to return to work. Finally,

while the Defendants have articulated a legitimate business justification for his

dismissal, Francis has introduced evidence which would allow a reasonable jury to find that the Defendants' justification was not the <u>overriding</u> justification. Consequently, Francis has satisfactorily raised a genuine issue of material fact, and the Defendants' Renewed Motion for Summary Judgment on Count Nine of his Amended Complaint is OVERRULED.[14]

Francis also claims that the actions of the Defendants violate Ohio's public policy interest in enforcing ERISA. Doc. #37, Count Twelve. The Ohio Supreme Court has determined that a plaintiff may not pursue a <u>Greeley</u> claim where it is premised upon a statute that provides an adequate remedy. <u>Wiles v. Medina Auto Parts</u>, 773 N.E.2d 526, 531 (Ohio 2002); <u>but</u> <u>cf.</u> <u>Collins,</u> <u>supra</u> (holding that where public policy exception was not <u>exclusively</u> based on statute, plaintiff may maintain action for violation of Ohio public policy). While that decision was narrowly applied to the Family and Medical Leave Act ("FMLA"), it has recently been applied to a variety of statutes. <u>See</u> <u>Bicudo v. Lexford Properties, Inc.</u>, 812 N.E.2d 315, 328 (Ohio App. 7 Dist. June 15, 2004) (holding in <u>Wiles</u> applies to age discrimination claims based on O.R.C. § 4112.02); <u>see</u> <u>also,</u> <u>Barlowe v. AAAA Intern. Driving School, Inc.,</u> 2003 WL 22429543 (Ohio App. 2 Dist. Oct. 24, 2003) (disability claims based on violations of O.R.C. § 4112.02); <u>Schmauch v. Honda of America</u>

---

[14]Francis' claim in Count Nine cannot be maintained against an individual defendant (<u>Arthur v. Armco, Inc.</u>, 122 F.Supp2d 876, 880 (S.D. Ohio 2000)). To the extent that he has attempted to articulate a claim for discharge in violation of public policy against Cusson, Defendants' Renewed Motion for Summary Judgment is SUSTAINED.

Mfg., Inc., 311 F.Supp.2d 631, 634 (S.D. Ohio 2003) (violations of Uniformed

Services Employment and Reemployment Rights Act). Consequently, according to

state law, Francis cannot maintain a public policy claim grounded in the state's

interest in enforcing ERISA. Even were the Plaintiff's' claim in Count Twelve not

precluded by state law, it would be preempted by ERISA § 502(a). See Metroplitan

Life Ins. Co. V. Taylor, 481 U.S. 58, 66-67, 107 S.Ct. 1542 (1987). The

Defendants are entitled to summary judgment on Count Twelve of Plaintiff's'

Amended Complaint as a matter of law. Therefore, the Defendants' Renewed

Motion for Summary Judgment is SUSTAINED as to that Count.


D. Tortious Interference with Employment Against Cusson (Count Ten)

In Ohio, an employee earning a living has a right to pursue employment free

from interference by third parties. Contadino v. Tilow, 68 Ohio App.3d 463, 467,

589 N.E.2d 48 (1990). This right extends to co-workers and supervisors. Id.

However, the right of non-interference is limited. "When the act complained of is

within the scope of a defendant's duties, a cause of action in tort for monetary

damages does not lie. Nor can liability be predicated simply upon the

characterization of such conduct as malicious." Anderson v. Minter, 32 Ohio St.2d

207, 213, 291 N.E.2d 457 (1972). In order to maintain a cause of action for

tortious interference with employment against a co-worker, a plaintiff must

demonstrate that the defendant acted solely in his or her personal capacity. See,

Contadino, supra. Further, the alleged interference must bear a causal relationship to the breach. Id.

Francis' claim against Cusson is predicated on his refusal to deal with Francis' counsel in the days leading up to his termination. The Defendants argue that Cusson was acting in the scope of his employment and in his professional capacity based on a corporate policy that encouraged the resolution of disputes directly with employees and not through other parties. Doc. #22, Cusson Dep. at 39. Francis contends that the corporate policy adopted by UPS, encouraging management not to speak with attorneys, was manifestly against Ohio public policy, that the common-law encourages legal counsel in the resolution of employment disputes, and, because the corporate policy was contrary to public policy, Cusson cannot be held blameless merely because he was acting within his authority. Doc. #57 at 20-21. Though Ohio has clearly stated a preference that employees be allowed to consult attorneys in seeking the resolution of employment disputes, the fact that Cusson followed a corporate policy that violated this public policy does not, in and of itself, raise a genuine issue of fact regarding whether Cusson acted in his personal capacity.

Ohio courts have clearly stated a preference that encourages "the unflinching discharge," of their duties even by the "most irresponsible" of employees. Anderson, supra at 213. Because Francis has failed to introduce evidence that would allow a reasonable jury to conclude that Cusson was acting

outside the scope of his authority by refusing to respond to communications from

Francis' attorney, he has failed to raise a genuine issue of material fact on an issue

on which he will bear the burden of persuasion at trial. Consequently, the

Defendants' Renewed Motion for Summary Judgment is SUSTAINED on Count Ten

of the Plaintiff's' Amended Complaint.[15]


E. <u>Intentional Infliction of Emotional Distress</u> (Count Eleven)

In order to recover on an action for intentional infliction of serious emotional

distress four elements must be proved:

1)    that the actor either intended to cause emotional distress or knew or
should have known that actions taken would result in serious
emotional distress to the plaintiff;

2)    that the actor's conduct was so extreme and outrageous as to go
"beyond all possible bounds of decency" and was such that it can be
considered as "utterly intolerable in a civilized community,"

3)    that the actor's actions were the proximate cause of plaintiff's
psychic injury; and

4)    that the mental anguish suffered by plaintiff is serious and of a nature
that "no reasonable man could be expected to endure it."

<u>Pyle v. Pyle</u>, 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (Ohio App., 8th Dist. 1983).

---

[15]The Defendants argue that UPS cannot be held liable because an employer
cannot tortiously interfere with its own business relationship. Because Count Ten is
pled only against Cusson, this argument is moot. However, the Defendants' legal
argument is correct. <u>Contandino</u>, <u>supra</u> at 470. Consequently, to the extent that
the Defendants seek summary judgment on behalf of UPS, their Renewed Motion
for Summary Judgment on Count Ten of Plaintiff's Amended Complaint is
SUSTAINED.

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

Yeager v. Local Union 20, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983). Here, Francis' claim fails for two reasons. He has failed to introduce evidence that suggests that he suffered any psychic injury as a result of the Defendants' actions, and he has failed to introduce evidence that would allow a reasonable jury to conclude that the conduct was "beyond all possible bounds of decency," and "utterly intolerable in a civilized community." Compare, Mitnaul supra (finding that genuine issue of material fact existed where plaintiff's clinical psychologist described the defendants behavior as "unbelievable and outrageous," and expressed opinion that actions had a negative impact on his recovery from clinical depression). Francis has failed to introduce evidence sufficient to create a genuine

issue of material fact on the second, third and fourth elements of this claim. Therefore, the Defendants' Renewed Motion for Summary Judgment on Count Eleven is SUSTAINED.

F. Loss of Consortium (Count Thirteen)

In order to establish a claim for loss of consortium, Mrs. Francis must establish that the Defendants committed a legally cognizable tort upon a spouse who suffered bodily injury. Francis v. Gaylord Container Corp., 837 F.Supp. 858, 864 (S.D. Ohio 1992, Beckwith, J); see also, Bowen v. Kil-Kare, Inc., 63 Ohio St.3d 84, 91-93 (1992). Because she has offered no evidence suggesting that Francis suffered physical harm as a result of the Defendants' actions, she has failed to raise a genuine issue of material fact. See, Francis supra; see also Black v. Columbus Public Schools, 79 Fed.Appx. 735, 739 (6th Cir. 2003). The Defendants' Renewed Motion for Summary Judgment on Count Thirteen is SUSTAINED.

G. Punitive Damages

Ohio law allows for punitive damages where a defendant acts with a "conscious disregard for the rights...of other persons...." Preston v. Murty, 32 Ohio St.3d 334, 335 (1987).[16] Here, the same evidence that would allow a jury to

---

[16]Plaintiff is not entitled to punitive damages under ERISA. Varhola v. Doe, 820 F.2d 809, 817 (6th Cir. 1987). Therefore, the only question before the Court is whether the Plaintiff's surviving state law claims are sufficient to support a claim for punitive damages.

infer that the Defendants discriminated against Francis on the basis of his handicap or that it retaliated against him when it terminated him, would allow a reasonable jury to find that they did so, with a "conscious disregard" for his rights, therefore raising a genuine issue of material fact. Because a genuine issue of material fact exists as to whether the Defendants acted with a "conscious disregard" for Francis' rights on his claims of handicap discrimination (Count Seven), retaliation in violation of state law (Count Eight), and violation of Ohio public policy (Count Nine), the Court OVERRULES the Defendants' Renewed Motion for Summary Judgment on the issue of punitive damages on these surviving state law claims.

V.    CONCLUSION

Defendants' Motion for Judgment is OVERRULED as to Counts One and Two and SUSTAINED as to Counts Three and Five. Defendants' Renewed Motion for Summary Judgment is SUSTAINED as to Counts Six, Ten, Eleven, Twelve and Thirteen, and OVERRULED as to Counts Four and Seven. Defendants' Renewed Motion for Summary Judgment on Count Eight is SUSTAINED to the extent it alleges retaliation for seeking reinstatement of ERISA benefits, and OVERRULED to the extent it alleges retaliation for seeking a reasonable accommodation for Plaintiff's handicap. Defendants' Renewed Motion for Summary Judgment on Count Nine is SUSTAINED as to Defendant Cusson and OVERRULED as to Defendant UPS. Defendants' Renewed Motion for Summary Judgment on the issue

of Punitive Damages on the surviving state law claims is OVERRULED.

Of the thirteen claims made in Francis' First Amended Complaint, his ERISA claim for denial of benefits against UPS (Count One), his ERISA claim for denial of benefits against LINA (Count Two), his claim for attorney's fees and costs (Count Four), his claim of handicap discrimination (Count Seven), his state law claim of retaliation (Count Eight), and his claim for violation of Ohio public policy, the right to seek legal counsel, (Count Nine) remain. Punitive damages may be sought on his remaining state law claims.

Defendant UPS is hereby ordered to review Francis' appeal of the denial of his short-term disability benefits within 60 days of the date of this order, and advise this Court as to the results of said appeal forthwith.[17] As soon as the Court is so notified, a telephone conference call will be scheduled and held. During that conference call, the Court and counsel will select a mutually convenient trial date

---

[17]Despite the fact that Defendants' original Motion for Summary Judgment was OVERRULED, in part, with prejudice (Doc. #36), they spent a significant portion of their argument in their Renewed Motion for Summary Judgment revisiting arguments already discarded by the Court. Defendants are hereby cautioned to pay strict attention to the findings of the Court, herein, as they undertake their review of Francis' appeal.

and other pertinent dates leading to the resolution of this litigation.

August 29, 2005

                                          /s/ Walter Herbert Rice
                                     WALTER HERBERT RICE, JUDGE
                                     UNITED STATES DISTRICT COURT

Copies to:
Counsel of record